UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

SLC Turnberry, Ltd. and Starwood   :
Hotels & Resorts Worldwide, Inc.,  :
    Plaintiffs,                    :
                                   :
v.                                 :      Case No. 3:04cv1814 (JBA)
                                   :
The American Golfer, Inc. and      :
Ian Martin Davis,                  :
    Defendants.                    :

**RULING APPROVING AND ADOPTING RECOMMENDED RULING [DOC. # 69] ON DEFENDANTS' MOTION TO VACATE DEFAULT JUDGMENT [DOC. # 58] OVER PLAINTIFFS' OBJECTIONS [DOC. # 70]**

As part of a series of failures by defendants to respond to discovery requests propounded by plaintiffs and related court orders compelling compliance therewith, defendants failed to comply with an order granting a Motion to Compel issued on May 1, 2006 and thus the Court (by Magistrate Judge Joan Glazer Margolis, to whom this case was referred for, <u>inter alia</u>, discovery purposes) granted, absent any opposition from defendants, plaintiffs' Motion for Default Judgment [Doc. # 47] on July 14, 2006, <u>see</u> Order [Doc. # 48]. This Court then referred the case to Magistrate Judge Margolis for a hearing on damages, <u>see</u> Order of Referral [Doc. # 49]. Subsequently, defendants filed a Motion to Stay to enable new counsel to review the facts and pleadings to prepare a motion to vacate the default judgment, <u>see</u> [Doc. # 50], which Motion was granted, <u>see</u> [Doc. # 57], and on December 1, 2006, defendants filed their Motion to

1

Vacate Default Judgment [Doc. # 58].

The Court referred the Motion to Vacate to Magistrate Judge Margolis, who issued a Recommended Ruling granting the Motion. Rec. Ruling [Doc. # 69]. Plaintiffs now object to the Recommended Ruling contending: (1) the Magistrate Judge erred in the standard she applied to defendants' Motion; (2) the Magistrate Judge erred in concluding that defendants had shown good cause to vacate the default judgment, even under the less stringent Fed. R. Civ. P. 55(c) standard; (3) the Magistrate Judge overlooked the fact that defendants offered no excuse for their failure to comply with the Court's most recent discovery order on which plaintiffs' Motion for Default Judgment was predicated; (4) the Magistrate Judge did not give appropriate consideration to the defendants' long history of prior defaults; (5) the Magistrate Judge erred in concluding the defendants' default was not willful, but simply "careless and neglectful;" (7) the Magistrate Judge erred in concluding that defendants were not bound by the acts of their former counsel; (8) the Magistrate Judge erred in concluding that defendants had a potentially meritorious defense; (9) the Magistrate Judge erred in concluding that plaintiffs would not be prejudiced if the Motion to Vacate were granted; and (10) the Magistrate Judge erred in calling for a status conference to discuss discovery as the discovery period has long since elapsed. Pls. Obj. [Doc. # 70].

As defendants' Motion to Vacate was a potentially dispositive motion referred to the Magistrate Judge for a recommended ruling, this Court makes a de novo determination of those portions of the Recommended Ruling to which plaintiffs have filed an objection. See 28 U.S.C. § 636(b); Fed. R. Civ. P. 72. Applying this standard, for the reasons that follow, plaintiffs' Objections to the Recommended Ruling will be overruled and the Recommended Ruling will be approved and adopted.

**I. Standard**

The Recommended Ruling applied the more lenient Rule 55(c) standard on the basis that an entry of default, as opposed to a default judgment, was entered on July 14, 2006, after which this Court referred the case to the Magistrate Judge for a hearing on damages consistent with Rule 55(b)(2) which would ultimately result in a final judgment. As the Recommended Ruling and the plaintiffs recognize, courts apply the same factors – i.e., "(1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented," Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 96 (2d Cir. 1993) – in considering both Rule 55 motions to set aside an entry of default and Rule 60(b) motions for relief from a default judgment, but "courts apply the factors more rigorously in the case of a default judgment," id. Here, no final judgment was entered as the Court had referred the case to

3

Magistrate Judge Margolis for a hearing on damages and Magistrate Judge Margolis characterizes her action on July 14, 2006 as entering default, rather than default judgment. In any event, however, as the Magistrate Judge found, even applying the more rigorous Rule 60(b) analysis, defendants' Motion to Vacate should be granted.

**II. Discussion**

<u>Good Cause to Vacate Default Judgment</u>

First, plaintiffs object to the Recommended Ruling on the basis that the declaration of defendant Ian Martin Davis and the affirmation of former defense counsel Peter E. Fleming are "so short, conclusory and lacking in evidentiary detail as to be legally insufficient for [the purpose of demonstrating good cause to vacate the default judgment]." Pls. Obj. at 2-3.

The declaration of defendant Davis sets forth the background of the dispute in this case as well as the fact that defendants were not aware of plaintiffs' Motion for Default Judgment, were "shocked by news that a default motion had been filed" and that when Davis spoke with Fleming in mid-August, after "repeatedly" attempting to reach him, Fleming told Davis that "he had 'egg on his face' for failing to notify [Davis] about his departure from Curtis, Mallet-Prevost Colt & Mosle, LLP" and that he "had 'screwed up'". Davis Decl. [Doc. # 58, Ex. A] ¶¶ 11-16, 18. Davis states that he received confirmation from Fleming's former

4

firm that "Mr. Fleming had left the firm and that the case had been allowed to go dormant or missing within the firm" and that the firm advised defendants to retain successor counsel because "the firm would have a conflict of interest since it was their oversight that led to the default." Id. ¶¶ 17, 19. Mr. Fleming's affirmation confirms Davis' declaration, stating that he left his former firm in late June 2006, that at no point prior to mid-August 2006 when contacted by Davis did he inform Davis of plaintiffs' Motion for Default Judgment, and that he also "neglected to obtain a client matter number which [his former firm] requires with new matters [and] [a]s a result, the matter was never placed on [the firm's] internal docketing system where administrative personnel would have monitored developments in the case." Fleming Aff. [Doc. # 68, Ex. A] ¶¶ 4-9. Accordingly, and because Fleming did not inform anyone at his former firm about the case, no one there was aware of the Motion for Default Judgment or of "the necessity to monitor the case and communicate with Mr. Davis." Id. ¶ 10.

The Court agrees with the Magistrate Judge that defendants' affirmation and declaration establish that their default was not willful, but rather due to the carelessness and neglect of their former counsel, which Mr. Fleming and his former law firm clearly acknowledge. Contrary to plaintiffs' contentions, these documents are neither conclusory nor lacking in evidentiary

5

detail, but rather set forth the factual circumstances leading to the granting of plaintiffs' Motion for Default Judgment and defendants' lack of knowledge thereof until August 2006. Although plaintiffs contend that Fleming's affirmation "is not credible on its face in claiming that he never put this case on his firm's internal docketing system" and that "it is simply inconceivable that the firm did not have a file on this case and did not know about it" as plaintiffs' counsel sent hard copies of all filings to the Stamford office of Fleming's former firm and spoke with either a receptionist or Fleming's secretary when calling Fleming, the Court will accept Fleming's affirmation as accurate absent any actual evidence to the contrary. Moreover, setting aside the veracity of the misplacement of this case within Fleming's former firm, the declaration of defendant Davis establishes that, in any event, he was completely unaware of the status of the case with respect to the Motion for Default Judgment until mid-August 2006.

### Defendants' Failure to Comply with Discovery Orders

Plaintiffs also object to the Recommended Ruling on the basis that even if defendants can explain their failure to respond to the Motion for Default Judgment and the most recent discovery order on which that Motion was predicated, they offer no excuse for their failure to comply with other outstanding discovery requests and related Court orders compelling such

6

compliance. Plaintiffs note that Fleming attests that he left his former firm in June 2006, but offers no explanation for discovery defaults before that date.

While defendants' affirmation and declaration do not explicitly address other outstanding discovery requests, defendants' former counsel's carelessness and neglect with respect to this case is apparent from the record and can, at least in part, explain defendants' failure to respond to any discovery. Moreover, while multiple discovery requests may remain outstanding, the Motion for Default Judgment was specifically addressed to defendants' failure to comply with the Court's latest discovery order and their failure to respond to the Motion for Default Judgment, which failures post-date Flemings' departure from his former firm and which defendants have thus explained. Further, to alleviate any prejudice to plaintiffs caused by granting defendants' Motion, the Court will permit plaintiffs to submit affidavits of attorneys fees and costs associated with filing motions to compel responses to outstanding discovery requests, which amounts, upon being deemed reasonable, defendants will be ordered to pay to plaintiffs.

<u>Defendants' Long History of Noncompliance/Defaults</u>

Plaintiffs argue that the Recommended Ruling also fails to take into account defendants' repeated defaults throughout this case, claiming defendants are "obstructionist" and have acted in

7

an "attempt[] to delay and/or avoid the payment of a just debt." Pls. Obj. at 5. As noted above, however, the Motion for Default Judgment was predicated on defendants' failure to comply with the Court's most recent discovery order, which is why defendants' Motion to Vacate is addressed to explaining their failure to comply with that order and to respond to the Motion for Default Judgment. Moreover, as noted above, the Court will attempt to mitigate any prejudice suffered by plaintiffs by awarding fees and costs associated with motions to compel, as well as by ordering defendants to fully comply with all outstanding discovery requests.

Willfulness

As discussed above, plaintiffs argue that defendants' declaration and affirmation are not credible and that it is "inconceivable" that defendants' former firm did not have a file on this case, even after Mr. Fleming's departure. However, plaintiffs offer no evidence to contest the attestations of Mssrs. Fleming and Davis and it is clear on the basis of their statements that not only was defendants' default not willful, but rather due to Fleming's carelessness, defendants were not even aware of it.

Acts of Former Counsel

Plaintiffs also contend that Magistrate Judge Margolis erred in concluding that the defendants were not bound by the

8

acts/omissions of their prior counsel.

As Magistrate Judge Margolis recognized, the general rule is that clients are considered bound by the acts or omissions of their attorneys. See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 396-97 (1993) (party could not avoid "the consequences of the acts or omissions of [its] freely selected agent" as "[a]ny other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney") (internal quotation omitted). However, as Magistrate Judge Margolis also observed, some courts have adopted the approach that an attorney's gross or extraordinary negligence will not be attributed to a client. See, e.g., Community Dental Servs. v. Tani, 282 F.3d 1164, 1168-71 (9th Cir. 2002). Here, defendants' former attorney admitted to his own utter carelessness, taking full responsibility for defendants' default and confirming that defendants were not even aware of the Motion for Default Judgment. Moreover, this is not a case of a party being held to his or her attorney's legal positions or withdrawal of unviable claims; rather, the assessment is one of willfulness and the record shows that defendants' former counsel, let alone defendants themselves who were unaware of the Motion for Default Judgment, did not act

9

willfully.

Potentially Meritorious Defense

Next, plaintiffs contend that Magistrate Judge Margolis erred in concluding that defendants pose a potentially meritorious defense, arguing that, inter alia, "[t]he defendants were required to present evidence of facts that, if proven at trial, would constitute a complete defense," and that defendants did not raise their "purported defense" as an affirmative defense in their Answer.

Defendants argue that plaintiffs violated the alleged contract by failing to perform "critical functions, including but not limited to the book," and "that it was the actions of the Plaintiffs that suppressed book sales." Def. Mem. in Support of Mot. to Vacate at 7. While plaintiffs argue that defendants "admitted the terms of the contract between the parties in their answer and did not raise this as an affirmative defense," Pls. Obj. at 7, plaintiffs fail to recognize that an element of a breach of contract claim is that the party seeking to enforce a contract or seek damages for breach thereof must have been performing its contractual obligations, see Chiulli v. Zola, 905 A.2d 1236, 1242-43 (Conn. App. Ct. 2006) ("The elements of a breach of contract action are the formation of an agreement, performance by one party, breach of the agreement by the other party and damages."), and thus defendants' claim that plaintiffs

10

were not so performing is not an affirmative defense that must be specifically pleaded and on which defendants will bear the burden of proof, but rather is an essential element of plaintiffs' claim.

Additionally, defendants' claim that Davis cannot be personally liable because all of the transactions in the case were conducted by American Golfer (albeit through Davis acting within the scope of his duties) is potentially meritorious, notwithstanding plaintiffs' contentions that the $200,000 allegedly obtained by defendants was due to Davis' allegedly knowingly false representations. Plaintiffs' argument that "it is irrelevant that Mr. Davis claims as a defense that he did not use such money for his own personal use," Pls. Obj. at 8, misunderstands defendants' reference to this argument in their Motion to Vacate, i.e., that if Davis was at the time acting legitimately within the scope of his duties and did not use corporate power improperly for his own personal gain, he cannot be held personally liable for the acts of the corporation, American Golfer.

Prejudice

Plaintiffs also contend that the Recommended Ruling does not adequately consider the prejudice that will be suffered by plaintiffs if the default is vacated, including because defendants have failed to respond to discovery requests and

11

comply with the Court's discovery orders, they "have successfully delayed this litigation for over 1½ years by their repeated obstructionist tactics," plaintiffs have incurred substantial extra costs as a result, and the delay "has undoubtedly jeopardized the plaintiffs['] chance of ultimate recovery . . . due to the apparently precarious financial condition of American Golfer."  Pls. Objs. at 8-9.

The Court acknowledges that some prejudice is inherent in the delay that has resulted from defendants' conduct.  However, "delay alone is not a sufficient basis for establishing prejudice."  See Davis v. Musler, 713 F.2d 907, 916 (2d Cir. 1983).  Moreover, the Court will attempt to mitigate the prejudice by ordering defendants' immediate and full compliance with all outstanding discovery requests, precluding evidence at trial which would have been responsive to that discovery if not timely produced, awarding sanctions in the form of attorneys fees and costs associated with plaintiffs' motions to compel to the Court, and by allowing only a very limited supplemental discovery period to allow defendants to prepare their case.  As to the plaintiffs' chance of recovery in view of the represented "precarious financial condition" of defendant American Golfer, while regrettable, in balancing it against the Second Circuit's preference for resolving disputes on their merits, see Powerserve Int'l, Inc. v. Lavi, 239 F.3d 508, 514 (2d Cir. 2001), the Court

finds vacating the default in this case the more appropriate course.

Additional Discovery

Lastly, plaintiffs contest the Magistrate Judge's calling for a status conference to discuss discovery, arguing that the discovery period has long since elapsed and that "to permit [defendants to conduct discovery] would be totally unfair to plaintiffs." Pls. Obj. at 9.

The original discovery period closed on June 30, 2006. See Order [Doc. # 46]. However, in the interests of resolving this dispute on its merits, the Court will permit the parties 45 days to conduct discovery in order to enable defendants to defend this case. Defendants' compliance with all outstanding discovery requests shall be made in 14 days.

**III. Conclusion**

For the foregoing reasons, the Recommended Ruling [Doc. # 69] is APPROVED and ADOPTED and accordingly the Motion to Vacate [Doc. # 58] is GRANTED. As discussed above, defendants are ordered to fully respond to all outstanding discovery requests by **March 22, 2007.** The parties may engage in a limited supplemental discovery period, to conclude **April 23, 2007.** The parties' Joint Trial Memorandum will be filed by **May 7, 2007,** a pretrial conference will be held on **May 17, 2007 at 3 p.m.** in Courtroom Two, United States District Courthouse, 141 Church Street, New

13

Haven, Connecticut, and Jury Selection will be conducted on **June 13, 2007 beginning at 9 a.m.** in Courtroom Two.

IT IS SO ORDERED.

/s/
Janet Bond Arterton, U.S.D.J.

**Dated at New Haven, Connecticut this 7th day of March, 2007.**